## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| GERALD and PAMELA BRINK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 4:21-CV-00824 JAR |
| | ) | |
| | ) | |
| GOODMAN MANUFACTURING | ) | |
| COMPANY, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Gerald and Pamela Brink ("Plaintiffs") bring claims of strict product liability and negligence against Defendant Goodman Manufacturing Company, L.P. ("Goodman") arising out of a furnace fire that damaged their home. Plaintiffs allege the fire was caused by a failed blower motor in their furnace, identified as a 2008-year model AMH951155DXAC, which in turn caused the condensate pan for the evaporator coil to melt. This matter is before the Court on Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition and Discovery Responses to Plaintiffs' Second Request for Production of Documents. (Doc. No. 20). On May 16, 2022, this Court stayed the Rule 30(b)(6) deposition of Goodman's corporate representative designee scheduled for May 24, 2022 pending resolution of Plaintiffs' motion. (Doc. No. 24). The motion is fully briefed and ready for disposition.

The discovery at issue concerns Plaintiffs' second requests for production numbers 1-6, 8-16, and 19 seeking information relating to a 2021 product recall on a group of Goodman Amana AMH95 model furnaces (CPSC Recall 22-021) and a Goodman Technical Service Bulletin (SF-090) relating to the installation of a "blower guard kit" and "drain pan with metal reinforcement kit" on furnaces subject to the recall. Plaintiffs contend this discovery is relevant

considering that Goodman has identified a fire hazard in the same AMH95 model family as the subject furnace which was the cause of the furnace fire in the instant case. In their request for production number 7, Plaintiffs seek production of all testing and research performed on the identical model to the subject furnace to determine that it was not necessary to install a pressure switch on the back of the blower motor housing to confirm air flow.[1]

Goodman opposes the motion, arguing that the requested information is outside the scope of permissible discovery since the furnace models subject to the recall and SF-090 Service Bulletin do not share "critical components" of the subject furnace. Goodman contends the subject furnace is an entirely different product than the recalled furnaces, manufactured over a decade prior to the recall, and contains entirely different component parts, namely the drain pan and blower motor. Goodman further argues that Plaintiffs' request for "all testing and research" on the subject furnace, with no limitation in time or scope, is overly broad and would require it to provide privileged investigation materials.

**Discussion**

There is "no black letter rule of law" regarding discovery disputes in products liability cases "other than to state that discovery of similar, if not identical, models is generally permitted." Pandolfo v. Exactech, Inc, No. 4:20-CV-00535-AGF, 2021 WL 2187910, at *3 (E.D. Mo. May 28, 2021) (quoting Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). Generally, different models of a product will be relevant if they share characteristics pertinent to the issues raised in the litigation. Id. (quoting Fine v. Facet Aerospace Prod. Co., 133 F.R.D. 439, 441 (S.D.N.Y. 1990) (cited by Hofer). Courts undertake a "fact specific determination of the extent of the similarities or dissimilarities" of claimed similar models to determine if discovery

---

[1] Plaintiffs state that requests for production numbers 9, 17, and 18 are not subject to their motion to compel. (Doc. No. 20 at 5 n.2).

of a model other than that involved in an accident in litigation should be allowed under Rule 26. Smith v. Toyota Motor Corp., No. 2:16-CV-00024-ERW, 2017 WL 1425993, at *2 (E.D. Mo. Apr. 21, 2017).

In Smith, for example, a personal injury case involving the alleged rollover of a 1997 Toyota 4Runner, the plaintiff sought data about rollover resistance factors for all generations of 4Runner models. Although Toyota listed several design differences between the generations, such as a new body structure and an all-new chassis, the court ruled these were "generally tangential to the rollover question at issue in this case" and ordered Toyota to produce the requested data for third-generation 1996-2002 4Runner model years, which included the 1997 model, and the "substantially similar" second generation 1990-1995 models, but rejected her bid for data on models made before 1989, finding they were too dissimilar to the model involved in the accident. 2017 WL 1425993, at *6.

Here, Plaintiffs argue their 2008 Amana AMH95 furnace is similar to the 2019-2021 Amana AMH95 furnaces subject to recall because it suffers from an identical design flaw resulting in a fire hazard. Specifically, Plaintiffs cite the inability of the furnace to properly monitor motor blower operation, which results in the overheating and ignition of the condensate pan. (Doc. No. 21 at 2). Goodman argues that discovery pertaining to the recall and service bulletin have no bearing on the subject furnace, noting it has manufactured hundreds of models of furnaces over several decades bearing the AMH95 designation (which means only that the furnace is an Amana brand, multi-position, with a 95% efficiency rating), all of which differ in design standards and component parts, including voltage, cabin width, heat capacity, as well as blower motor and drain pan. (Doc. No. 23 at 5).

A number of courts, including in this district, have recognized that earlier and later product models can share pertinent characteristics despite design differences. In Pandolfo,

plaintiff sued the manufacturer of an artificial knee replacement device for injuries caused by the device's failure. The device consisted of four main components, each of which came in different, interchangeable models. 2021 WL 2187910, at *1. Plaintiff propounded discovery requests for information related to other similar incidents involving alleged failures of the knee replacement device and defendant objected, arguing that discovery should be limited to incidents involving the same model components implanted in the plaintiff. Id. Plaintiff argued that no limitation with respect to the component model type was warranted because all models were part of the same knee replacement system and contained the same pertinent characteristics, despite minor differences in design. Id. at *2. The Pandolfo court concluded that plaintiff was entitled to discovery regarding other similar incidents to the extent they involved the same primary component type, regardless of which interchangeable model was used. Id. at *3.

Also instructive is Mt. Carmel Mut. Ins. Ass'n v. CNH Am., LLC, No. C12-4112-DEO, 2014 WL 6775593 (N.D. Iowa Dec. 2, 2014) (cited by Pandolfo), granting a motion to compel regarding other similar incidents involving different models of a combine than the one owned by the plaintiff where the plaintiff alleged a defect arising from the use of a non-metal material to construct the combine's fuel tank. The defendant argued that none of its predecessor series of combines were similar enough to permit discovery, noting differences in the shape and/or location of fuels tanks on its other models. Id. at *3-4. The court disagreed, finding the "pertinent characteristic" for determining the proper scope of discovery was the fuel tank itself regardless of which combine model was involved. Id. at *4.

Courts also consider the similarities between the accidents involving the subject model and models for which discovery is sought. In Bourque v. CNH American, LLC, No. 6:10-CV-01347, 2011 WL 4904430 (W.D. La. Oct. 14, 2011), the plaintiff alleged that the gas cap design on his tractor's fuel tank was defective because it allowed for "geysering" of gasoline when

4

pressure built up in the fuel tank due to heating from the engine. Id. at *1. Plaintiff sought discovery of information regarding the defendant's recall and mandatory modification program for certain gas caps/tanks. Defendant sought a protective order, arguing that since plaintiff's tractor was a 1962 model, and the recall was for caps/tanks manufactured from 1964 to 1972, neither the recall nor design modifications had any relevance to the gas cap or tank used by the plaintiff. Defendant further argued plaintiff's gas cap was a different size than those subject to recall. Id. at *1. Plaintiff responded that the tractor models were the same; the gas cap on his tractor was in fact the same gas cap subject to recall; and those gas caps had a documented history of "geysering" as in the instant case.

The Bourque court found the information sought by plaintiff discoverable under Rule 26(b)(1), noting that one of the elements to determine whether a product is unreasonably dangerous in design is whether there existed an alternative design for the product that could have prevented the claimant's accident. Id. at *2. Even if the gas cap was a different size, as the defendant asserted, the court could not say the information had "no possible bearing" on the plaintiff's claims, particularly since the same type of event, "geysering," had occurred in the same or similar fuel systems. Id. "If there existed an alternative design … that came about through the recall/Mandatory Modification Program, it may certainly have a bearing on the plaintiff's claims." Id.

Applying these principles to the instant case, the Court concludes that Plaintiffs are entitled to the requested discovery regarding Goodman's recall and service bulletin. Like in Pandolfo, where the Court permitted discovery on incidents involving the same faulty component across different component models, here, the cause of Plaintiffs' furnace fire and the subject of Goodman's fire hazard recall was a faulty blower motor. Even if the blower motors are from different suppliers, as Goodman contends, the Court cannot find that the information

sought can have no possible bearing on Plaintiffs' claim, particularly given the similarity between the defect in their furnace and those addressed in the recall. Plaintiffs' furnace was unable to properly regulate the heating of the condensate drain pan causing it to overheat and ignite. Likewise, the furnaces subject to recall were unable to properly regulate the condensate pan. As such, the cause and nature of the incidents are substantially similar.

Of course, the fact that evidence of similar models and/or incidents may be discoverable does not mean it will ultimately be admissible if, upon further analysis, it is not in fact substantially similar to Plaintiffs' furnace. See Pandolfo, 2021 WL 2187910, at *3-4; see also McMahon v. Robert Bosch Tool Corp., No. 4:18-CV-583 CAS, 2019 WL 4141027, at *3 (E.D. Mo. Aug. 30, 2019) ("There is a significant distinction between whether evidence of similar incidents is admissible and whether it is discoverable.").

Goodman has also objected to Plaintiffs' request for "[a]ll testing and research performed on the AMANA, AMH951155DXAC model furnace, to determine that it was not necessary to install a pressure switch on the back of the blower motor housing to confirm air flow," as overly broad and unduly burdensome and seeking privileged investigation materials. Plaintiffs respond that their request is specifically limited to research pertaining to the installation of a pressure switch on one furnace model and as such is sufficiently narrowly tailored.

The Court agrees with Goodman that Plaintiffs' request – unlimited in terms of time and scope – is overly broad but notes that Goodman has not provided any support for its privilege argument other than a general assertion that the investigation materials sought by Plaintiffs are privileged and work product. The Court will direct the parties to meet again and confer and attempt to narrow the issues pertaining to Plaintiffs' request for production number 7.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to compel [20] is **GRANTED** in part. Within fourteen (14) days of the date of this order, and **no later than Tuesday, June 28, 2022**, Goodman shall produce documents responsive to Plaintiffs' Second Request for Production of Documents Numbers 1-6, 8-16, and 19.

**IT IS FURTHER ORDERED** that **no later than Tuesday, June 28, 2022**, the parties shall meet and confer on Plaintiffs' Request for Production number 7 to narrow the issues and notify the Court of the need, if any, for the Court's intervention.

Dated this 14th day of June, 2022.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**